1  LAWRENCE M. HADLEY - State Bar No. 157,728
   lhadley@glaserweil.com
2  STEPHEN E. UNDERWOOD - State Bar No. 320,303
   sunderwood@glaserweil.com
3  GLASER WEIL FINK HOWARD
      JORDAN & SHAPIRO LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
6
   LAWRENCE R. LAPORTE, State Bar No. 130,003
7  Lawrence.LaPorte@lewisbrisbois.com
   LEWIS BRISBOIS BISGAARD & SMITH LLP
8  633 West 5th Street, Suite 4000
   Los Angeles, California 90071
9  Telephone: 213.250.1800
   Facsimile: 213.250.7900
10
   *Attorneys for Plaintiff*
11 *Core Optical Technologies, LLC*

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   WESTERN DIVISION

15 CORE OPTICAL TECHNOLOGIES,           CASE NO: 8:19-cv-2190-JAK-RAO
   LLC,                                 CASE NO: 8:20-cv-1463-JAK-RAO
16                                       CASE NO: 8:20-cv-1468-JAK-RAO
17              Plaintiff,
                                        **JOINT REPORT FOLLOWING
18      v.                              MANDATE**

19 NOKIA CORPORATION and NOKIA          Status Conference:  August 26, 2024
   OF AMERICA CORPORATION;
20                                       Hon. John A. Kronstadt
   ADVA OPTICAL NETWORKING SE
21 and ADVA OPTICAL NETWORKING
   NORTH AMERICA, INC.; and
22
   CISCO SYSTEMS, INC.
23
                Defendants.
24

25

26

27

28

2426546.4

Pursuant to ECF Nos. 200 and 201, Plaintiff Core Optical Technologies, LLC ("Core Optical") and Defendants Nokia Corporation and Nokia of America Corporation ("Nokia"), ADVA Optical Networking SE and ADVA Optical Networking North America, Inc. ("ADVA"), and Cisco Systems, Inc. ("Cisco") (collectively, "the Parties") hereby submit this Joint Report in advance of the August 26, 2024 Status Conference, stating the Parties' collective and/or respective positions as to the following: (i) the procedural status of any settlement efforts, including whether further efforts would be productive, and if so, when those efforts should occur and with what type of neutral—a Magistrate Judge, a member of the ADR Panel, or a private neutral; (ii) the proposed dates for the completion of the remaining pretrial matters, if any; (iii) a proposed range for a trial date, and (iv) the stayed application to tax costs.

**1.    Settlement Efforts**

On May 27, 2020, approximately six months after filing the Nokia case, Core Optical and Nokia conducted a mediation before Magistrate Judge Suzanne Segal (Ret.). The mediation did not result in settlement. Core Optical's counsel has discussed settlement informally with counsel for Cisco and ADVA. In the Rule 26 scheduling reports, the parties agreed to Local Rule 16-15.4 ADR Procedure 3 (private dispute resolution proceedings).

***Core Optical's Position***: Core Optical believes that further mediation with Nokia might be productive, and proposes that Core Optical and Nokia conduct another mediation before Judge Segal to be completed within 90 days.

Core Optical has offered to mediate with Cisco and ADVA but has not yet received a response. Core Optical believes that mediation with Cisco and ADVA might be productive, and that such a mediation should occur with Cisco and ADVA collectively based on the relationship between Cisco and ADVA and their representation in this matter by the same counsel. Core Optical believes that private mediation should be used, and that Core Optical and Cisco/ADVA should select a

mediator (and report the same to the Court) within 14 days of the August 26 status conference, and that the mediation should be completed within 90 days thereafter.

**Defendants' Positions**:

*Cisco and ADVA:* Cisco and ADVA are amenable to engaging in mediation with Core Optical, and believe that either private mediation or ADR through the Court could be effective. Cisco and ADVA believe that this mediation could be conducted in the next few months, to determine if the cost of litigation might be avoided.

*Nokia:* Nokia is amenable to engaging in mediation with Core Optical within 90 days, and believes that another private mediation could be effective. Given Core Optical and Nokia's preference to mediate quickly, Nokia believes the parties should meet and confer regarding which mediator to use.

## 2. Dates for Completion of Remaining Pretrial Matters

On October 1, 2021, this Court stayed all pretrial deadlines in the Nokia/Cisco/ADVA cases (except for standing-related proceedings) pending resolution of Defendants' motion for summary judgment on standing issues. ECF No. 77 (Cisco case).[1] At that time, fact discovery was ongoing. The parties had completed most document production but were engaged meet and confer communications regarding some remaining production issues. Additionally, Defendants completed the deposition of Core Optical under Fed. R. Civ. P. 30(b)(6) and of Dr. Mark Core, the inventor and a Member of Core Optical, in his personal capacity. No other depositions had been taken, other than third-party depositions pertaining to the standing issue, as well as a deposition of Nokia Corporation (a Finnish entity) on personal jurisdiction.

The parties also had completed all briefing on claim construction issues and had filed their claim construction PowerPoint presentations. On September 9, 2021,

---

[1] Separate identical orders were issued in each case.

Glaser Weil

the Court entered an Order taking the *Markman* hearing under submission, finding that, pursuant to Local Rule 7-15, the claim construction issues could be decided without oral argument. ECF 68 (Cisco case).

Finally, in accordance with an Order on the parties' stipulation to extend deadlines and continue the *Markman* hearing, the following pretrial deadlines remained at the time of the stay (ECF No. 59 (Cisco case)):

| Scheduling Event | Previous Deadline |
|---|---|
| Anticipated claim construction order | October 25, 2021 |
| S.P.R. 4.1 – Final Infringement Contentions and Expert Reports | January 28, 2022 |
| S.P.R. 4.4 – Advice of Counsel production | January 28, 2022 |
| S.P.R. 4.2 – Final Invalidity Contentions and Expert Reports | February 25, 2022 |
| S.P.R. 4.3 – Rebuttal Expert Reports (infringement) | February 25, 2022 |
| S.P.R. 4.3 – Rebuttal Expert Reports (invalidity) | March 25, 2022 |
| S.P.R. 4.3 – Close of Discovery | April 22, 2022 |
| S.P.R. 4.5 – Dispositive Motions Deadline | May 20, 2022 |
| Last day to conduct settlement conference or mediation with Outside ADR/Non-Judicial neutral | June 17, 2022 |
| Notice of Settlement or Joint Report Re Settlement | June 21, 2022 |

| Post-Mediation Status Conference | July 11, 2022 at 1:30 P.M. |
| Final Pretrial Conference and Trial | None set |

### Core Optical's Position

Core Optical proposes that the parties follow the prior consolidated case schedule but adjusted for the 1,061 days (approximately 2 years, 11 months) the cases were stayed between October 1, 2021 and August 26, 2024, with an extra 30 days to review the status of completed discovery. Core Optical's proposed dates, set forth in the joint chart below, are consistent with this proposed adjustment.

Defendants propose that the cases be bifurcated, that all pretrial proceedings be limited to the standing issue, that the Court hold a bench trial on standing, and *only then*—if Core Optical prevails on the ownership issue, after any post-trial motions (and presumably appeals are resolved)—would the case restart on the merits. Defendants assert that their proposed schedule will "promote judicial economy." It will not. Defendants' proposed schedule will only add further to the already extensive delay, and possibly result another appeal before Core Optical may even start pursuing a final decision on the merits. That would undoubtedly prejudice Core Optical severely because the passage of another year or two before Core Optical can resume the discovery will make it far more difficult to collect evidence needed to prove infringement and damages—particularly as memories fade and percipient witnesses relocate. Even worse, once Core Optical finally gets to a jury on the merits, the jury will be considering infringement of technology that Defendants developed years ago.

Already twenty-five years has passed since Dr. Core first filed for the '211 Patent, and well over a decade has passed since the first defendant, Ciena Corp., first began infringing the '211 Patent and was sued before settling the case out of Court. Since that time, there have been three failed IPR Petitions that were never instituted (Fujitsu, Infinera and Nokia/Juniper), three claim construction orders (Ciena, Fujitsu and Infinera), and full and complete claim construction briefing in this case.

Defendants were also permitted to seek summary judgment on the standing/ownership issue while all other issues were stayed—promising that no material facts would precluded a finding that Dr. Core never owned the '211 patent. Defendants' promises failed to materialize as both this Court and the Federal Circuit found material fact disputes on each factor in the TRW Invention Agreement governing the assignment obligation. Bifurcating this case again, keeping all merit issues stayed, will only compound the delay already incurred—even after Defendants were given a chance to prove the absence of ownership as a matter of law.

Core Optical does not dispute that the factual issues identified by this Court and the Federal Circuit must be resolved. It is equally true that this Court has wide discretion in adopting procedure for resolving these issues. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008). Nothing in the district court cases Defendants cite below—*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV 01-10396 MMM (CWx), 2009 WL 10699035, at *4–9 (C.D. Cal. July 14, 2009); *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *1–4 (N.D. Cal. Feb. 4, 2008); *Mission I-Tech Hockey Ltd. v. Oakley, Inc.*, 394 F. Supp. 2d 1270, 1273–75 (S.D. Cal. 2005)—hold otherwise.

Core Optical submits that regardless of the procedure adopted for resolving standing/ownership, this case should go forward on all issues up to the pretrial conference to minimize any further delay. As to the procedure for resolving standing, Core Optical submits that the underlying factual issues should be resolved by a jury and that, after a jury verdict, this Court can decide whether to accept that verdict as a matter of law. This is the procedure that courts presented with factual disputes regarding ownership and standing have adopted. *See Applera Corp.--Applied Biosystems Grp. v. Illumina, Inc.*, 375 F. App'x 12, 15 (Fed. Cir. 2010) ("The [Northern District of California] court conducted a two-phase jury trial. In Phase I, the jury returned a verdict for Dr. Macevicz and Solexa on patent ownership. In Phase II, the jury determined that claim 1 of the '119 patent was not invalid for obviousness

1    but that it was not infringed.").

2          This is the most economical approach, and one that is also fair to both sides.

3    The Court can decide at the pre-trial phase how to phase witness testimony at trial

4    based on a complete discovery record in the case, including both fact witness

5    testimony and expert witness opinions.  A single jury trial will also avoid what is

6    likely to be multiple trials and appeals under Defendants' proposal.  A single jury trial

7    will also allow the parties and their witnesses, both fact and expert, to appear only

8    once at deposition and trial. A complete record before this Court is also what the

9    Federal Circuit no doubt prefers, should another appeal be necessary.  Finally, while

10   all parties are willing to mediate, it seems that trial is likely given the Cisco/Adva

11   Defendants' settlement position above that they will only resolve this case based on

12   the "cost of litigation," not the merits.

13         Other reasons supporting Core Optical's proposed approach are as follows:

14         *First*, the parties easily can be ready for trial on all issues in less than a year.

15   Most document discovery has been done, written discovery is mostly completed, and

16   claim construction issues have been completely brief and are ready for resolution.

17   Defendants complain that a "tremendous amount of work, such as fact discovery,

18   expert reports, and expert discovery, remains on merits of this case."  But Defendants

19   far overstate the remaining work, which mostly consist of depositions and expert

20   discovery.  Moreover, Core Optical has provided Defendants with full access to the

21   extensive records in the prior district court actions (including the prior patent licenses

22   and their terms), and PTAB proceedings involving the '211 patent—proceedings that

23   thoroughly addressed all relevant prior art.

24         Defendants suggest that the factual issues identified in the Federal Circuit's

25   opinion will require significant discovery and issues for this Court to consider.  But

26   Defendants never identify what specific additional evidence will be needed that has

27   not already been collected.  Defendants deposed Dr. Core on the ownership issues.

28   And in staying this case previously, the Court made an exception for discovery

relevant to Defendants' standing summary judgment motion.  The parties completed production of all documents relevant to standing.  Defendants also assert that "the parties [will need to] to subpoena third parties regarding their employer-funded education programs, and participants in those programs, to obtain discovery regarding the evidence of the 'entirely on my own time' contract language," but without identifying the third parties.  The parties already took discovery from Northrop Grumman (formerly TRW) on issues ranging from the Invention Agreement to Dr. Core's work for TRW.  This discovery included document production and multiple depositions.  Indeed, Cisco and ADVA's counsel obtained declarations from Northrop witnesses (including a declaration for Defendants' reply brief) and represented the Northrop witness in their depositions.

*Second*, testimony and evidence on the remaining standing/ownership issues will largely overlap with other issues in this case, including infringement, validity, and damages. On summary judgment, this Court found a genuine question of material fact on whether the inventions claimed in the '211 patent "resulted from" Dr. Core's work for TRW. (ECF No. 111 at 18 -25). On appeal, the Federal Circuit found a question of material fact on whether Dr. Core developed the invention claimed in the '211 patent on his own time. *Core Optical Techs., LLC v. Nokia Corp.*, 102 F.4th 1267, 1274 (Fed. Cir. 2024). Both issues are highly intertwined with liability and damages issues.  All issues collectively will require testimony on Dr. Core's development of the invention—a critical part of any inventor testimony in any patent case.  The ownership/standing issues also will overlap with expert testimony rebutting Defendants' invalidity defenses, which include obviousness challenges based on Dr. Core's work on satellite receivers at TRW. Similarly, the issues may overlap with infringement testimony on the scope of the '211 patent and expert testimony on damages issues like apportionment and non-infringing alternatives that Defendants will likely raise. Those issues will certainly turn on how Dr. Core's fiber optic receiver described in the '211 patent differs from, and improved upon, existing

receivers in both the satellite and fiber optic arts. If the Court were to bifurcate the case, it would require that much of the testimony on the ownership/standing issue be repeated in a liability and damages trial.[2]

The Federal Circuit has recognized that "the degree of intertwinement of jurisdictional facts and facts underlying the substantive claim should determine the appropriate procedure for resolution of those facts." *DDB Techs.,* 517 F.3d at 1291. Here, the degree of intertwinement warrants resolution of both the standing/ownership issues and the merits issues by a jury.  This Court already found that, based on the extensive record before the Court, including inventor and expert declarations, whether the inventions claimed in the '211 patent "resulted from" Dr. Core's work for TRW could not be decided on summary judgment, and these same jurisdictional facts are also facts underlying the merits of Core Optical's causes of action, including its validity claims (the prior TRW work in RF was unrelated to, and did not render as obvious, the optical fiber XPIC inventions of the '211 Patent), and damages issues (the value of the patented inventions over the prior art under the Georgia-Pacific factors.  *See Finjan, Inc. v. Secure Computing Corp*., 626 F. 3d 1197 (Fed. Cir. 2010) ("factors 10 and 13, which relate to '[t]he nature of the patented invention' and '[t]he portion of the realizable profit that should be credited to the invention'.").  Defendants even agree that "technical issues will be discussed in relation to ownership…that will also address a narrow set of technological issues related to (i) the work at TRW and (ii) the '211 patent," and thus apparently concede the point.  In short, having the jury decide facts relating standing/ownership allows this Court to simultaneously get to the merits and avoid potentially appealable issues. And again, the Court can assess how best to proceed at the pre-trial stage once the full record of this case is established.  This approach, not Defendants' bifurcated

---

[2] Defendants have not offered to concede liability if they do not prevail in their proposed ownership/standing trial.

1  approach, leads to true judicial economy.

2  *Third*, the stayed customer cases do not warrant a different approach.  There

3  will no undue burden on these Customer Defendants—just as there has been no such

4  burden to this point.  Their cases are all stayed, and each appears satisfied with

5  counsel for Cisco/ADVA/Nokia handling matters in the current active cases, perhaps

6  as a result of contractual obligations, as the Customer Defendants are content with

7  their cases not being active. For these Customer Defendants to supply limited "use"

8  discovery, based on a damages defense being raised by the Manufacturing

9  Defendants, and under the watchful jurisdiction of the Magistrate Judge or Court if

10  needed, is of minimal legal inconvenience.

11      In sum, this case should proceed on the schedule that Core Optical proposes

12  and the case be set for a jury trial on all remaining issues—including the standing

13  issue based on ownership—with any needed phasing of the trial to be determined

14  based on the complete record at the pretrial conference.

15      ***Defendants' Positions***

16      Defendants (Cisco, ADVA, and Nokia) believe that discovery, summary

17  judgment, and trial on ownership and standing should be bifurcated from the trial on

18  the merits, and that merits discovery should begin only after proceedings on

19  ownership/standing conclude.

20      **Addressing the Threshold Issue of Standing First Will Promote**

21      **Substantial Judicial Economy in These Cases:**

22      In this consolidated action, Core Optical alleges that Defendants and dozens of

23  Defendants' customers, i.e., the DOE defendants, infringe a patent that Core Optical

24  does not own.  Focusing the parties on the threshold issue of ownership and standing

25  will promote judicial economy, avoid burdening both parties, as well as third parties,

26  and—importantly—will not prejudice Core Optical.

27      *First*, because there is a legitimate question regarding Core's standing, there is

28  "an obligation to ensure that subject matter jurisdiction exists before proceeding." *See*

Glaser Weil

Nokia Dkt. 144 (quoting *Reseda Med. Clinic v. Liberty Mut. Ins. Co.*, No. CV 17-3686-GW(MRWX), 2017 WL 7661484, at *1 (C.D. Cal. June 13, 2017); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (indicating that courts must assure themselves of the existence of subject matter jurisdiction before proceeding); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Here, the Federal Circuit noted that "[b]ecause the ownership question is a ***threshold 'jurisdictional issue of standing'*** separate from the merits of Core Optical's patent-infringement suit, the district court has the authority to act as the finder of fact 'to resolve the jurisdictional issues.'" Opinion at 23 (emphasis added) (*citing DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290-92 (Fed. Cir. 2008)).

*Second*, focusing the case on ownership and standing will also promote judicial economy. These cases include numerous merits-based issues that need not be addressed prior to adjudication of the threshold issue of Core's standing. For example, if the Court limits discovery to standing and ownership, then it does not need to expend resources to: (1) issue a claim construction order; (2) rule on ASN's motion to dismiss (*Core Optical Techs., LLC v. Comcast Corp. et al.*, Case No. 8:21-cv-00046, D.I. 81 JAK (RAOx)); (3) rule on Core Optical's motion for leave to file a third amended complaint against the Nokia Defendants (Nokia Dkt. 97); (4) rule on whether the court has personal jurisdiction over Nokia Corp. (Nokia Dkt. 61); or (5) rule on merits-based discovery issues that will certainly arise.

Core argues that a single jury trial encompassing ownership/standing, infringement, invalidity (e.g. anticipation, obviousness, written description, and enablement), and damages "is the most economical approach." This contention is facially untenable. Patent juries must already navigate numerous highly technical issues on liability and damages; adding yet another complicated fact-finding inquiry on the meaning of "own time" or whether the '211 patent "resulted from" Dr. Core's work at TRW is incredibly burdensome and risks jury confusion. Importantly, contrary to Core's claim that it purports to know "what the Federal Circuit no doubt

prefers," Core's proposal **directly contravenes** the mandate from the Federal Circuit that "shifting from summary judgment to fact-finding **does not involve a shift from judge to jury.**" Opinion at 23.

*Third*, a tremendous amount of work, such as fact discovery, expert reports, and expert discovery, remains on the merits of this case. All this work is wholly unrelated to the threshold issues of ownership and standing.  Regarding the merits of this case, only two depositions have been conducted in the pending cases, i.e., the deposition of Mark Core and a deposition of Nokia Corp. related to jurisdictional discovery. Nokia Dkt. 103-2, ¶ 3.

While Core argues that "the parties had completed most document production," and "[t]he parties completed production of all documents relevant to standing," nothing could be further from the truth.  Core's production is far from complete: it has steadfastly withheld documents—in some cases for *years*—only to spring them on Defendants when it suits Core.  For example, Core withheld a declaration of Mr. Pascal Finkenbeiner that it obtained in *2015* until producing it in its opposition to Defendants' motion for summary judgment in *2021*.  Similarly, Core withheld documents undisputedly relevant to ownership, such as the "S&EG Fellowship Program; Costs Reimbursement Agreement," until *after final judgment* was entered in this case and *after* it filed its appeal to the Federal Circuit.  Core also refused to produce Dr. Core's lab notebooks in electronic form, requiring **in-person inspection** of the lab notebook during the peak of the COVID-19 pandemic, without providing any justification for its refusal.[3]

In light of this mountain of late-produced discovery, Core's assertion that "Defendants *completed* the deposition of Core Optical…and of Dr. Mark Core" is highly misleading. There is little question that Defendants will need to take Dr. Core's deposition once more.

---

[33] Dr. Core also submitted a 40 page declaration after his deposition.

Additionally, Core Optical has served 30(b)(6) deposition notices on each defendant that comprise 42 topics unrelated to issues of ownership and standing. *Id*., ¶ 4. Given the wide breadth of the 42 topics, it is almost certain that Defendants will have to provide multiple witnesses for 30(b)(6) depositions.

In addition to the vast resources necessary for the parties to complete the fact depositions described above, there also remains a significant amount of discovery yet to be produced and reviewed by both parties, including email communications. Prior to summary judgement, the Parties were in the process of negotiating a stipulation regarding email production, which currently provides for production of up to 25,000 emails from each Defendant Group (i.e., the Nokia Defendants, Cisco, and ADVA). *Id*. ¶ 5. In other words, should the Court determine that Core lacks standing, the parties will have needlessly produced and reviewed up to ***75,000*** emails from the Defendants alone.  Further, though Core argues that the remaining work "mostly consist of depositions and expert discovery," Core neglects to mention that it ***has never inspected Cisco's source code*** in this case, even though Cisco made it available for inspection in July 2021.  Likewise, Core has not once updated its infringement contentions, despite multiple requests from Cisco to cure the numerous deficiencies contained therein.

Finally, Core improperly argues prior PTAB proceedings on the '211 patent—which it admits were never instituted—"thoroughly addressed ***all*** relevant prior art." Core ignores that Cisco must take discovery on prior art systems, which as a matter of law cannot be addressed in PTAB proceedings.

*Fourth*, Core Optical's merit-based discovery will significantly burden non-parties.  Core Optical has sued Defendants' customers: AT&T, Charter, Comcast, Google, Microsoft, Verizon, Apple, BTE, CenturyLink, Cox, Quest, Zayo, Amazon, and 30 unnamed DOES. Core Optical has stated that it intends to take third-party

discovery of these non-parties in these cases as part of its merits-based discovery.[4] *Core Optical Techs., LLC v. Amazon.com, Inc. et al.*, Case No. 8:21-cv-00049-JAK (RAOx), D.I. 35, 36; *Core Optical Techs., LLC v. Comcast Corp. et al.*, Case No. 8:21-cv-00046 JAK (RAOx) Dkt. 58, 59; *Core Optical Techs., LLC v. Charter Commc'ns, Inc.*, Case No. 8:21-cv-00789 JAK (RAOx), D.I. 32, 33.  None of these non-parties should be forced to engage in costly discovery on the merits of the litigation before Core Optical establishes it even has standing to bring these suits. Core merely states that supplying discovery of practice of the asserted method claims is "of minimal legal inconvenience."  This is again simply false—to prove infringement of a method claim, the patentee must prove that ***each and every step*** is performed.  *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (2012).  The accused products have numerous settings and configurations that will differ for each customer's specific implementation.  Far from being of "minimal legal inconvenience," discovery must at a minimum include discovery on how a specific accused product used by each customer is configured to perform the claimed method steps.

     Defendants' proposed schedule, which resolves the issue of standing first, promotes judicial economy, and avoids the needless waste of the Parties', non-parties', and the Court's time and resources, will not prejudice Core Optical.

**The Federal Circuit's Opinion Guides the Parties to Engage in Thorough Discovery on Standing and to Pursue a Bench Trial on Ownership/Standing:**

     The TRW Invention Agreement ("Agreement") assigned to TRW "all [i]nventions which relate to the business or activities of TRW," except for those that fall within the definition of "Non-TRW Inventions" contained in paragraph 9 of that

---

[4] Core Optical has stated its intention to keep these customer cases stayed, while taking discovery from the customers to demonstrate supposed use of the accused products in the Nokia, Cisco, and ADVA cases.

Agreement. *See* Nokia Dkt. 101-8 (TRW Invention Agreement). It is undisputed that U.S. Patent 6,782,211 ("the '211 patent") was developed while Mark Core was employed by TRW and subject to the Agreement. Accordingly, to establish standing, which requires ownership of the '211 patent, the '211 patent must be a "Non-TRW Invention." Defendants moved for summary judgment that the '211 patent was assigned to TRW under the Agreement, and that Core Optical lacks standing to bring this litigation. Nokia Dkt. 107. The Court issued a summary judgment order on August 4, 2022 finding that the '211 patent does not meet the definition of "Non-TRW Invention," that the '211 patent had been automatically assigned to TRW (and its successor Northrop Grumman), and as a result, Core Optical lacked standing to bring this suit. Nokia Dkt. 144.

In its Summary Judgment Opinion, this Court interpreted the TRW Invention Agreement and held that the '211 Patent is a Non-TRW Invention if—and only if—three conditions are satisfied. Nokia Dkt. 144 at 14. The first condition is that "no equipment, supplies, facility, or trade secret information of TRW was used" to develop the invention. The second condition is that the invention was developed "entirely on [Core's] own time." *Id.* And the third condition can be satisfied in either of two ways: (a) by demonstrating that the invention "[did] not relate (1) to the business of TRW or (2) to TRW's actual or demonstrably anticipated research or development" or (b) by demonstrating that the invention "[did] not result from any work performed by [Core] for TRW." The Court's Summary Judgment Order found that undisputed facts demonstrated that the '211 patent was not "developed entirely on [Core's] own time"—and therefore the second condition is not satisfied. *Id.* at 26-28. In addition, that Order found that there is no factual dispute that the '211 patent "related to TRW's business" (*Id.* at 16-18), and that there were fact questions regarding whether the '211 patent "resulted from any work performed by [Core] for TRW" (*Id.* at 18-25).

Core Optical appealed to the Federal Circuit on two narrow issues: (1) whether

the '211 was developed "entirely on [Core's] own time" and (2) whether the Federal Circuit's long-standing precedent regarding automatic assignment should be overturned.  Notably, Core Optical did not appeal with respect to any other part of this Court's Summary Judgment Order, including its finding that there is no dispute of material fact that the '211 patent "related to TRW's business."  Appellate briefing was submitted in January through June of 2023, and oral argument was held on April 1, 2024.  The Federal Circuit issued an opinion on May 21, 2024.  Nokia Dkt. 197 (Fed. Cir. Opinion).

The Federal Circuit's opinion found that the contract phrase, "entirely on [Core's] own time," in the Agreement "does not compel one choice or another between two different perspectives," presented by Defendants and Core Optical regarding the invention of the '211 patent that was undisputedly identical to the subject of "Dr. Core's PhD studies."  *Id*. at 14. The Opinion recognized that "Dr. Core was not free to use the entirety of his off-the-clock hours any way he wished without accountability to TRW," that "[h]is participation in the [F]ellowship [P]rogram" came  "with [] substantial funding, *e.g.*, tuition and a stipend," that this funding "was dependent on [Core's] actual pursuit of his PhD research," and that as a result, "[Core] had to spend a large chunk of his off-the-clock time in ways for which he was accountable, financially, to TRW."  *Id*. at 14.  The Opinion ultimately remanded for further factual development to regarding the meaning of the "entirely on [Core's] own time" contract language.  *Id*. at 12, 21.  In particular, the Court specifically commented that "evidence of custom, usage, and practice in a field is sometimes relevant when commonly used language is on its face uncertain in meaning… evidence falling within this category would seem significant in the present setting if enough employer-funded education programs are common," and suggested "[t]his is a subject worth exploring on remand." *Id.* at 21.  This will require the parties to subpoena third parties—for example, similarly-situated technology companies such as Raytheon, Lockheed-Martin, Boeing, Intel, Motorola,

Microsoft, General Dynamics, Booz-Allen Hamilton, Honeywell, General Electric, or McDonnell Douglas, that may have offered similar fellowship graduate degree programs—regarding their employer-funded education programs, and participants in those programs, to obtain discovery regarding the evidence of the "entirely on my own time" contract language.

The Federal Circuit's Opinion concluded by explaining that "[b]ecause the ownership question is a threshold 'jurisdictional issue of standing' separate from the merits of Core Optical's patent-infringement suit, the district court has the authority to act as the finder of fact 'to resolve the jurisdictional issues.'" Opinion at 23 (citing *DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290-92 (Fed. Cir. 2008)). The Federal Circuit was also clear that the issue of ownership of the '211 patent and standing "shifting from summary judgment to fact-finding does not involve a shift from judge to jury," i.e., that this is an issue to be decided at the bench. Opinion at 23.

The Federal Circuit's guidance is consistent with overwhelming precedent, which holds that when standing is in question, the court must first resolve the standing issue before allowing the case to move to the legal claims at issue. *See, e.g.*, *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV 01-10396 MMM (CWx), 2009 WL 10699035, at *4–9 (C.D. Cal. July 14, 2009) (holding that, on remand, a court must address whether plaintiff had constitutional and prudential standing before proceeding to the merits of a patent infringement case); *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *1–4 (N.D. Cal. Feb. 4, 2008) (holding that a court must determine whether a plaintiff had both constitutional and prudential standing, as of the filing date of the complaint, before addressing the merits of the case); *Mission I-Tech Hockey Ltd. v. Oakley, Inc.*, 394 F. Supp. 2d 1270, 1273–75 (S.D. Cal. 2005) (holding that a court must determine whether an exclusive licensee of a patent had prudential standing before reaching the merits of the case). It is black-letter law that "before a federal court can consider the

Glaser Weil

merits of a legal claim," standing must be established.  *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (calling standing the "threshold jurisdictional question").  That is because "standing serves to identify those disputes which are appropriately resolved through the judicial process."  *Id.*

Accordingly, Defendants request that the Court reopen discovery and conduct a bench trial on the issue of standing prior to the jury trial on the merits of Core Optical's claim.  In addition to the issue of the meaning of "entirely on [Core's] own time," on which the Federal Circuit remanded, the parties will also have additional factual development on the first condition (that "no equipment, supplies, facility, or trade secret information of TRW was used" to develop the invention) and subpart b of the third condition (that the invention "does not result from any work performed by [Core] for TRW").

This Court has previously resolved standing issues by holding a bench trial on the standing issue in advance of any jury trial on the legal claims.  *See, e.g.*, *Aspex*, 2009 WL 10699035, at *15 (holding that an evidentiary hearing on the standing of an exclusive licensee is proper where that issue is unrelated to the substantive claim of patent infringement).  *DDB*, which the Federal Circuit cited, is factually analogous to this case, and especially instructive:  the plaintiff in *DDB* entered into an employment agreement with his former employer that included an automatic assignment clause for all inventions defined therein.  *See* 517 F.3d at 1286–88.  The court conducted an evidentiary hearing to resolve the issue of standing before proceeding to the merits of the case.  *Id.* at 1288 (describing testimony presented by the parties at the hearing on Defendants' motion to dismiss.)

While Core Optical protests a schedule that addresses ownership and standing before a trial on the merits due to supposed delay, it can claim no genuine prejudice.  The '211 patent is already expired.  Further, Core Optical is a non-practicing entity, and does not compete with any of the Defendants.  In short, Core Optical seeks only

monetary damages and will be made whole regardless of whether those damages are paid now or later.

Core argues that a bifurcated bench trial on standing "would undoubtedly prejudice Core Optical severely" because it will make it more difficult to "collect evidence needed to prove infringement and damages." But Core tacitly admits that it already has all the information it needs: Core argues above that the parties have "completed *most* document production." And regardless of what information remains to be collected, Core's argument that the passage of time will hinder this collection is patently false: the source code for the accused products has already been collected, preserved, and made available for inspection, and there is a litigation hold in place to preserve documents, emails, and financial records from relevant custodians. Core's purported concern with the fading memories of unnamed percipient witnesses also rings hollow—the accused products are still on sale, and their operation is described in technical specifications and source code—not the memories of engineers. Indeed, if anyone has been prejudiced by the passage of time, it is *Defendants*: Dr. Core hid the very existence of the '211 patent from his employer for over a decade, and purportedly preserved absolutely no records corroborating his contention that he purchased his own supplies and used only his own facilities to develop the purported invention of the '211 patent.

Core suggests it will be prejudiced because "once Core Optical finally gets to a jury on the merits, the jury will be considering infringement of technology that Defendants developed years ago," without explaining how amounts to prejudice. It is unlikely that *any* juror is familiar with the accused products, or optical cross polarization interference cancellation, regardless of when the trial is held. And Core ignores the fact that the jury will be already adjudicating an ancient, expired patent that is over twenty-five years old.

Finally, any delay in the resolution of its infringement claims against Defendants is of Core's own making. Core had the ability to attempt to clear title of

the '211 patent and resolve the ownership and standing issues *a decade ago,* prior to launching its second, third, and fourth litigations. Indeed, doing so would have netted Core an additional $2.5 million dollars from Ciena. But it declined to do so. Defendants cannot be blamed for Core's refusal to establish standing before continuing its protracted litigation campaign.

Core Optical's second argument against bifurcating ownership and standing from the merits is that there will be an overlap in issues such as infringement and validity. This is an overstatement at best. While technical issues will be discussed in relation to ownership, such as whether the '211 patent "resulted from" Core's work for TRW, that will address a narrow set of technological issues related to (i) the work at TRW and (ii) the '211 patent. A full trial on the merits must address numerous and wholly unrelated issues and evidence, first and foremost whether the numerous—and exceedingly complex—accused products infringe the asserted claims, as well as whether numerous prior art references in Defendants' invalidity contentions anticipate or render obvious the '211 patent, Defendants' other defenses under 35 U.S.C. § 112, and the value of the '211 patent and what, if any, damages are to paid if it is found valid and infringed.

Core falsely suggests that the scope of discovery needed for the above issues is coextensive with what is needed to provide ownership. Glaringly, Core does not even allege that infringement is intertwined with standing. Nor could it—whether Core's invention resulted from work he performed in the 90's has absolutely no overlap in "underlying facts" with whether Defendants' products from 2016 infringe the asserted claims. And as discussed above, Core has not even begun to adduce the proof it needs to meet its burden on infringement.

Core also suggests invalidity is "intertwined" with the standing inquiry, largely because its expert Dr. Kahn conflated the standard for "results from" with novelty in his declaration. But Core ignores obviousness altogether, and that Defendants must take discovery on third-party prior art systems, and potentially the authors of the

Kaverhad and Lankl papers from which Dr. Core claims he learned of critical elements—including the 2x2 butterfly structure—of the claimed invention. Defendants also need to take discovery on the value of the '211 patent—ostensibly beyond deposing Dr. Kahn—such as on Dr. Core's failed attempts to monetize his purported invention, including the deposition of his employee/partner Derek Kubo. Indeed, Core admits the only overlap in the ***fifteen*** *Georgia-Pacific* factors and the standing inquiry are factors 10 and 13. Both parties need to take discovery on the other 13 factors, which are totally unrelated to standing.

And Core Optical cannot reasonably dispute that ownership and standing will address numerous issues that will not be addressed during a trial on the merits, including (i) whether Dr. Core used and equipment, supplies or facilities of TRW's in developing the '211 patent, or (ii) "evidence of custom, usage, and practice in a field" with respect to the "entirely on my own time" language. The fact that Dr. Core will need to testify in a bench trial on ownership and standing, and again in a trial on the merits, does not warrant the cost and expense of fact and expert discovery, and an entire jury trial on the merits, that may be altogether unnecessary. As demonstrated by Core's non-sequitur that a trial on "'the work at TRW and… the '211 patent'…apparently concede[s] the point" that these topics are related to invalidity and damages, Core's argument that these issues are intertwined simply begs the question.

Core Optical's final argument is that the decision to bifurcate ownership / standing from the merits is merely "discretionary." But the Federal Circuit's opinion is clear: "[b]ecause the ownership question is a threshold 'jurisdictional issue of standing' separate from the merits of Core Optical's patent-infringement suit the district court has the authority to act as the finder of fact 'to resolve the jurisdictional issues,'" and that in doing so, the judge remains the fact finder. Opinion at 23 (citing *DDB*, 517 F.3d at 1290–92). As the 9th Circuit has held, "[b]ecause ***the court (and not a jury)*** decides standing, the district court must decide issues of fact necessary to

make the standing determination." *Crayton v. Concord EFS, Inc.*, 686 F.3d 741, 747 (9th Cir. 2012). *See also EMC Corp. v. Pure Storage, Inc.,* 165 F. Supp. 3d 170, 174 (D. Del. 2016)("Whether a plaintiff has standing to sue is a matter of law to be determined by the court.")

Core Optical's reliance on *Applera* completely ignores the different procedural posture of that case. In *Applera,* Judge Alsup specifically ruled that "this is ***not a 'standing situation'***," and therefore "*DDB Technologies* does not apply." *See Applera Corporation-Applied Biosystems Group v. Illumina, Inc. et al.,* No. C-07-02845 WHA, ECF 181 (denying Plaintiff's motion to bifurcate). Rather, the Plaintiff "sued, under various state-law theories, to establish ownership of the patents," which Judge Alsup commented "is a classic jury trial situation." *Id.* The Defendants counterclaimed for infringement of those same patents. *Id. See also Applera Corp. v. Illumina, Inc.,* No. C 07-02845 WHA, 2008 WL 501391, at *3 (N.D. Cal. Feb. 21, 2008). The court held "Defendants still retain their right to a jury trial on the issues ***put in play by the complaint.*** This is so even if defendants ***would have no right to a jury trial on the 'standing' issue in the counterclaims***." ECF 181 at 1. The situation here is entirely different: Core Optical initiated this lawsuit, and Cisco challenged its standing to bring suit. And as discussed above, in the 9th Circuit, "the district court must decide issues of fact necessary to make the standing determination." *Applera* is inapposite, and Cores reliance upon that case is utterly misplaced.

***Joint Scheduling Chart***

In according with the Court's order, the parties submit their respective scheduling proposal in the joint chart below:

| Scheduling Event | Plaintiff's Proposed Deadline: | Defendants' Proposed Deadline: | Court Order |
|---|---|---|---|
| Close of Fact Discovery | N/A | February 28, 2025 | |

| | | | |
|---|---|---|---|
| on Ownership | | | |
| Opening Expert Reports on Ownership | N/A | March 14, 2025 | |
| Responsive Expert Reports on Ownership | N/A | March 28, 2025 | |
| Close of Expert Discovery on Ownership | N/A | April 11, 2025 | |
| Summary Judgment Motion on Ownership | N/A | April 25, 2025 | |
| Opposition to Summary Judgment Motion on Ownership | N/A | May 2, 2025 | |
| Reply in Support of Summary Judgment on Ownership | N/A | May 16, 2025 | |
| Trial on Ownership | N/A | July 2025 | |
| Fact Discovery on Merits Opens | | 2 Weeks after Court's Decision on Ownership | |
| *Markman* Decision | September 25, 2024 | To Be Decided by the Court | |
| S.P.R. 4.1 – Final Infringement Contentions and Expert Reports | January 31, 2025 | Later of February 13, 2026 or 24 Weeks from Court's Decision on Ownership | |

| | | | |
|---|---|---|---|
| S.P.R. 4.4 – Advice of Counsel production | January 31, 2025 | Later of February 13, 2026 or 24 Weeks from Court's Decision on Ownership | |
| S.P.R. 4.2 – Final Invalidity Contentions and Expert Reports | February 28, 2025 | Later of March 13, 2026 or 28 Weeks from Court's Decision on Ownership | |
| S.P.R. 4.3 – Rebuttal Expert Reports (infringement) | February 28, 2025 | Later of March 13, 2026 or 28 Weeks from Court's Decision on Ownership | |
| S.P.R. 4.3 – Rebuttal Expert Reports (invalidity) | March 28, 2025 | Later of April 10, 2026 or 32 Weeks from Court's Decision on Ownership | |
| S.P.R. 4.3 – Close of Discovery | April 25, 2025 | Later of May 8, 2026 or 36 Weeks from Court's Decision on Ownership | |
| S.P.R. 4.5 – Dispositive | May 23, 2025 | Later of June 5, | |

| | | | |
|---|---|---|---|
| Motions Deadline | | 2026 or 40 Weeks from Court's Decision on Ownership | |
| Last day to conduct settlement conference or mediation with Outside ADR/Non-Judicial neutral | See proposal above | Later of July 31, 2026 or 48 Weeks from Court's Decision on Ownership | |
| Notice of Settlement or Joint Report Re Settlement | 5 days after completion of mediation | 5 days after completion of mediation | |
| Post-Mediation Status Conference | July 14, 2025 at 1:30 P.M. | 10 days from Notice of Settlement or Joint Report Re Settlement | |
| Final Pretrial Conference | August 11, 2025 | Later of September 7, 2026 or 5 Weeks from Court's Decision on Ownership | |
| Trial | August 18, 2025 | TBD | |

**3.    Proposed Range of Trial Dates**

As discussed above, Core Optical proposes that a jury trial on all issues commence on August 18, 2025.  Core Optical believes trial can be completed in 5-7 days.

Defendants propose a bench trial on ownership in July 2025, and a jury trial on the merits in February 2026.

The Nokia Defendants propose a bench trial on ownership in August 2025, and that a date for a jury trial should be identified only after the Court's ruling on ownership and standing.

**4.    Defendants' Stayed Motion to Tax Costs**

Given the Federal Circuit's decision and mandate, Core Optical believes that Defendants should withdraw their motion to tax costs.  Nokia agrees to withdraw its application to tax costs (Nokia D.I. 151), without prejudice to refile a new application to tax costs at a later date.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

*For Plaintiff Core Optical:*

DATED:  August 16, 2024      GLASER WEIL and LEWIS BRISBOIS LLP

By:  */s/ Lawrence M. Hadley*
LAWRENCE M. HADLEY
STEPHEN E. UNDERWOOD
LAWRENCE R. LAPORTE

*For Nokia Defendants*

DATED:  August 16, 2024      ALSTON & BIRD LLP

By:  */s/ James Abe*
JAMES ABE
JOHN D. HAYNES
THOMAS W. DAVISON

*For ADVA Defendants:*

DATED:  August 16, 2024      WINSTON & STRAWN LLP

By: */s/ Daivd P. Enzminger*
DAVID P. ENZMINGER
KRISHNAN PADMANABHAN

*For Defendant Cisco:*

DATED:  August 16, 2024      WINSTON & STRAWN LLP

By: */s/ Daivd P. Enzminger*
DAVID P. ENZMINGER
KRISHNAN PADMANABHAN